STATE OF MINNESOTA

IN SUPREME COURT

A13-2350

Original Jurisdiction                                                    Per Curiam

In re Petition for Disciplinary Action against
Herbert Azubuike Igbanugo, a Minnesota                    Filed:  May 20, 2015
Attorney, Registration No. 191139.                    Office of Appellate Courts

_____

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota.

Herbert Azubuike Igbanugo, Minneapolis, Minnesota, pro se.
_____

S Y L L A B U S

A 90-day suspension is the appropriate sanction for an attorney who, among other things, failed to communicate with clients, failed to credit client fees, attempted to collect fees that had already been paid, failed to diligently represent clients, and sent harassing letters in an effort to collect legal fees.

O P I N I O N

PER CURIUM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a Petition for Disciplinary Action against respondent Herbert Azubuike Igbanugo, alleging, among other things, that Igbanugo failed to communicate with clients, failed to credit client fees, attempted to collect fees that had already been paid, failed to diligently

1

represent clients, and sent harassing letters in an effort to collect legal fees. The referee concluded that Igbanugo's conduct violated the Minnesota Rules of Professional Conduct, found several aggravating factors, and recommended that Igbanugo be suspended from the practice of law for 90 days. We conclude that Igbanugo committed professional misconduct that warrants a 90-day suspension.

Igbanugo began practicing law in Minnesota in 1988 and has been subject to professional discipline on three previous occasions. Much of Igbanugo's law practice has been in the immigration area, and the referee made the following findings with respect to each of these matters: (1) Y.I. and A.I.; (2) K.A.; (3) R.R. and K.R.; and (4) D.L.[1]

*Y.I. and A.I. Matter*

This matter involves a fee dispute. In 1995 Y.I. and A.I., a married couple, lawfully entered the United States. In June 2002 Y.I. and A.I. retained Igbanugo and his law firm at the time, Blackwell Igbanugo Engen & Saffold P.A, to file an asylum claim. Y.I.'s and A.I.'s native language is Russian, and an interpreter was present during some of their meetings with Igbanugo. Over the years, Y.I. and A.I. entered into a number of legal services contracts with the firm and its successor, Blackwell Igbanugo P.A. After the dissolution of Blackwell Igbanugo P.A., Y.I. and A.I. retained Igbanugo Partners International Law Firm PLLC (Igbanugo Partners) for legal representation. Igbanugo is the sole shareholder and partner of Igbanugo Partners.

---

[1] The referee found no misconduct in two other client matters. Those findings have not been challenged in this appeal.

As Y.I.'s and A.I.'s attorney, Igbanugo represented Y.I. and A.I. in a number of matters pursuant to the various legal services agreements with Blackwell Igbanugo P.A. and Igbanugo Partners. Over the course of the representation, Y.I. and A.I. made monthly payments for their attorney fees. In April 2007 on appeal from the immigration court's denial of Y.I.'s and A.I.'s asylum petition, the United States Court of Appeals for the Eighth Circuit granted Y.I. and A.I. asylum. In June 2007 Igbanugo Partners and Y.I. and A.I. entered into a "rider to contract for legal services." The rider supplemented an earlier fee agreement with Blackwell Igbanugo P.A. and provided as follows:

> In consideration of the professional services to be rendered by IGBANUGO PARTNERS and our discounted fees and costs for your matter, you agree at the outset of representation that IGBANUGO PARTNERS is entitled to attorneys' fees and costs for successful litigation against the government in the federal court(s) and for litigating the fee request pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2414(d) & 5 U.S.C. § 504 et. seq., in the event of a court order or settlement agreement.

In August 2007 Igbanugo filed a motion with the Eighth Circuit seeking $32,129 in attorney fees pursuant to the Equal Access to Justice Act (EAJA). In September 2007, the Eighth Circuit granted the motion for the entire amount requested, plus $250 as reimbursement of Y.I.'s and A.I.'s filing fee. Igbanugo retained the entire amount awarded by the Eighth Circuit and did not credit any portion of that amount to the remaining fees that Y.I. and A.I. owed.

Igbanugo subsequently brought a lawsuit in the name of Igbanugo Partners against Y.I. and A.I. for $12,569 in unpaid attorney fees. In an affidavit filed in this collection lawsuit, Igbanugo stated: "I am deeply disturbed by [Y.I.'s and A.I.'s] unholy efforts to

3

steal my services without paying just compensation of which they were contractually bound." Igbanugo eventually obtained a default judgment against Y.I. and A.I.[2]

The referee found that the billing statements that served as the basis for the $12,569 in unpaid attorney fees contained errors, including a $500 charge for attendance at a 2009 hearing that did not involve Y.I. and A.I. Based on these findings, the referee concluded that Igbanugo violated Minn. R. Prof. Conduct 1.4(a)(3) (failing to keep a client reasonably informed about the status of the matter); 1.5(a) (prohibiting the charging of unreasonable fees); 1.5(b) (failing to communicate to the client the scope of representation and the basis or rate of fees and expenses); and 4.4(a) (prohibiting the use of means that have no substantial purpose other than to embarrass, delay, or burden).

*K.A. Matter*

In December 2000 Igbanugo successfully assisted K.A. in obtaining permanent resident status in the United States. In January 2002, as K.A. was returning to the United States from outside of the country, he was cited for possession of a small amount of marijuana. K.A. paid a $100 fine for the misdemeanor offense. In November 2002 as K.A. was again returning to the United States from outside of the country, his marijuana conviction was noted at the airport. Consequently, K.A. was classified as an arriving alien under immigration law and was charged as being subject to removal. In response,

---

[2]  The trial court ordered a default judgment because Y.I. and A.I. failed to respond to the complaint or attend the court proceedings. The process server, however, served the summons and complaint at an incorrect address for Y.I. and A.I. The court was also given the incorrect address. Y.I and A.I. learned of the litigation when Igbanugo garnished their bank accounts. Once the improper service was brought to Igbanugo's attention, he promptly took action to vacate the default judgment.

4

K.A. retained Blackwell Igbanugo P.A., with Igbanugo as the responsible attorney, to represent him both in the removal proceeding and to withdraw his guilty plea to the misdemeanor offense. The removal proceeding continued for more than 6 years.

On September 11, 2009, the immigration court denied Igbanugo's motion to terminate the removal proceeding. Shortly after, a warrant was issued for K.A.'s arrest and K.A. was taken into custody. After several failed attempts to obtain K.A.'s release, Igbanugo informed K.A.'s wife and brother that a habeas petition was necessary to secure K.A.'s release, and that filing such a petition would require an additional $5,000 in attorney fees and another $5,000 towards K.A.'s outstanding bill. K.A., who disagreed with the amount of the attorney fees Igbanugo had charged throughout the removal proceeding, retained new counsel.

After K.A. terminated representation with Igbanugo, Igbanugo began pursuing K.A. to collect unpaid attorney fees. After K.A. failed to make payments, Igbanugo sent a series of letters to K.A. One letter, dated May 2010, stated the following:

> You are merely trying to escape your financial obligation to me. And unless you and your wife never again maintain any type of business or personal account in this country, I will get my money from you. You have mistaken my kindness for weakness. I did not get to where I am today allowing people, like you, to "punk me." Perhaps you need to be taught a lesson in life. . . .
>
> So unless you want me to own all of your future earnings in your shipping business, or at least most of it, you will start by telephoning my brother and telling him that you were wrong about me "messing you up," and I am demanding this of you.
>
> And if I as much as hear from any other source that you have said any negative thing about me, my firm and your very difficult case, I will come after you with "hell and brimstone." But please do not forget that after you

5

answer to me, you will also answer to God, the Father, who sees all the evil that men do. What I am saying to you is you will additionally suffer divine justice because this is sheer evil and wickedness.

In March 2011 Igbanugo filed a lawsuit in the name of Igbanugo Partners against K.A. for $17,160 in unpaid attorney fees. During a March 2012 hearing before the trial court in the collection lawsuit, Igbanugo stated the following in an attempt to impeach K.A.'s honesty:

> Now, the actual sworn declaration that he answered at the airport, maybe you're not very familiar with it, [K.A.] admits to using marijuana outside of the United States. *And, as his counsel, he admitted to me that he smokes marijuana.* I mean, he is a marijuana smoker. He admitted that. So, to come here and sit here and say that he never smoked marijuana is perjury.

(Emphasis added.) The trial court ordered the testimony stricken for violating K.A.'s attorney-client privilege.

In June 2012 the trial court ultimately issued an order for judgment in favor of K.A. The court concluded, among other things, that Igbanugo could not enforce the fee agreements between K.A. and Blackwell Igbanugo P.A. because the lawsuit was brought by Igbanugo Partners and there was no evidence of an assignment or conveyance by Blackwell Igbanugo P.A. of its contract rights with K.A. to Igbanugo Partners. With respect to the contracts between Igbanugo Partners and K.A., the court found that the total amount owed was the face amount of the contracts, which was $13,350, but because K.A. had paid Igbanugo $9,906, the balance due to Igbanugo was $3,444. The court also concluded that Igbanugo provided incompetent representation and, as a result, Igbanugo had forfeited the remaining $3,444 in outstanding fees. The court of appeals affirmed all of the findings and conclusions of the trial court, with the exception of the finding that

6

Igbanugo had provided incompetent counsel, thus forfeiting his legal fees. Therefore, the court of appeals concluded that Igbanugo was entitled to a modified judgment of $2,944.

On June 4, 2013, Igbanugo sent a letter to K.A. that, among other things, stated:

> I do know that you present yourself to [your pastor] as a Christian and God-fearing man and discussed this matter extensively with him. So you will ultimately answer to God for your theft of my legal services. Likewise, you must also answer to God for your false report with evil intent to the Minnesota Lawyers Professional Responsibility Board.

Following this letter, Igbanugo Partners sent K.A. several invoices to collect payment on the court's judgment. On three separate occasions, June 25, 2013, July 25, 2013, and August 21, 2013, Igbanugo Partners sent K.A. billing statements asserting that K.A. still owed $17,451. The referee concluded that Igbanugo's conduct with respect to the K.A. matter violated Minn. R. Prof. Conduct 1.5(a) (prohibiting the charging of unreasonable fees); 3.1 (prohibiting the assertion of frivolous claims); 3.4(c) (prohibiting knowingly disobeying the rules of a tribunal); 4.4(a) (prohibiting use of means that have no substantial purpose other than to embarrass, delay, or burden); 8.4(d) (prohibiting conduct prejudicial to the administration of justice); and 8.4(g) (prohibiting harassment based on sex, race, age, creed, religion, color, national origin, disability, sexual orientation, or marital status).

*R.R. and K.R. Matter*

In 2008 R.R. and K.R. separately entered the United States and later married. On October 23, 2009, R.R. and K.R. retained Igbanugo Partners to represent them in a removal proceeding. Igbanugo assigned the matter to K.D., an associate attorney with Igbanugo Partners.

7

At an October 29, 2009, immigration hearing, K.D. filed notices of entry of appearance identifying herself and Igbanugo as attorneys for R.R. and K.R. At that same hearing, the government provided written instructions outlining requirements for the collection of certain "biometric data," such as photographs, fingerprints, and signatures, which R.R. and K.R. needed to provide before the next immigration hearing. The collection of biometric data is required in every asylum matter and the failure to provide the data can result in the denial of the asylum application. In addition to the instructions for collecting biometric data, the immigration court requested that within 30 days R.R. and K.R provide various original documents to the government. The court scheduled the next hearing for April 28, 2010, but the hearing did not take place until January 12, 2011.

On December 3, 2009, K.D. provided the government and the court with some, but not all, of the requested material. The material provided was only a small portion of the material necessary to support R.R. and K.R.'s asylum claim. K.D. stopped working at Igbanugo Partners in July 2010. After K.D. left Igbanugo Partners, Igbanugo assigned R.G. to work on the R.R. and K.R. matter.

At the time of the January 12, 2011, hearing, which Igbanugo attended on behalf of R.R. and K.R., all of the required biometric data and original documents still had not been provided. At the hearing, the government noted that the required biometric data had not been collected and moved to dismiss the asylum application. In response, Igbanugo explained that he assumed that those materials had already been provided. With respect to the motion to dismiss, Igbanugo objected, noting that the mistake was due to his and K.D.'s oversight, not the client's. The court denied the motion. At the conclusion of the

hearing, the immigration court ordered that the remaining materials be provided to the government within 1 week. R.R. and K.R. promptly provided Igbanugo with the required documents for their asylum application. But the court's mandate notwithstanding, Igbanugo did not provide the materials to the government in a timely manner. It was not until April 20, 2011, that a portion, but again not all, of the materials were submitted to the government.

On August 24, 2011, the immigration court held another hearing on R.R.'s and K.R.'s asylum application. During this hearing, the court noted that not all of the required materials had been provided and dismissed R.R. and K.R.'s asylum application. In doing so, the court found that Igbanugo had provided ineffective assistance of counsel. The referee concluded that Igbanugo failed to act diligently in the R.R. and K.R. matter, in violation of Minn. R. Prof. Conduct 1.3.

*D.L. Matter*

On July 18, 2012, Igbanugo appeared before the immigration court at a hearing on behalf of D.L. During the hearing, the court concluded that Igbanugo failed to diligently and competently handle D.L.'s matter. The court ordered and Igbanugo agreed to self-report his conduct to the Office of Lawyers Professional Responsibility within 30 days. Igbanugo did not self-report until September 26, 2012. The referee concluded that Igbanugo, by failing to timely report his conduct as ordered by the immigration court, violated Minn. R. Prof. Conduct 3.4(c) (knowingly disobeying the rules of a tribunal) and 8.4(d) (conduct prejudicial to the administration of justice).

9

The Director bears the burden of proving professional misconduct by clear and convincing evidence. *In re Voss,* 830 N.W.2d 867, 874 (Minn. 2013). Here, the Director agrees with the referee's findings, conclusions, and proposed discipline. Igbanugo, having ordered a transcript, contests a number of the referee's findings of fact and conclusions of law. When a party orders a transcript of the disciplinary hearing, the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), RLPR; *Voss,* 830 N.W.2d at 874. Instead, we give great deference to the referee's findings and will uphold those findings if they have evidentiary support in the record and are not clearly erroneous. *Voss,* 830 N.W.2d at 874.

A referee's findings are clearly erroneous when we are "left with the definite and firm conviction that a mistake has been made." *In re Coleman*, 793 N.W.2d 296, 303 (Minn. 2011) (citation omitted) (internal quotation marks omitted). We particularly defer to the referee's findings when they "rest on disputed testimony or in part on credibility, demeanor, and sincerity." *Voss,* 830 N.W.2d at 874 (citation omitted) (internal quotation marks omitted). The proper interpretation of the rules of professional conduct is a question of law that we review de novo, but we review a referee's conclusion that an attorney's conduct violated a rule of professional conduct for clear error. *In re Montez*, 812 N.W.2d 58, 66 (Minn. 2012).

A.

We begin with the Y.I. and A.I. fee dispute. Igbanugo first challenges the referee's finding that an interpreter was not always present during Y.I.'s and A.I.'s

meetings with Igbanugo. Igbanugo argues that Y.I. and A.I. either had one of their sons or their daughter-in-law present at all meetings to serve as an interpreter. At Igbanugo's disciplinary hearing, Y.I. and A.I. testified that an interpreter was sometimes present at their meetings. Igbanugo cross examined Y.I on this issue and attempted to impeach his credibility. Nevertheless, the referee found Y.I.'s and A.I.'s testimony credible. Because we give particular deference to a referee's findings that rest on credibility, the referee did not clearly err in making this determination. *See In re Waite*, 782 N.W.2d 820, 824 (Minn. 2010).

Igbanugo next challenges the referee's finding that Igbanugo's representation of Y.I. and A.I. ended in 2007. At the disciplinary hearing, A.I. testified that she did not remember exactly when Igbanugo's representation ended, but that she thought it ended in 2007, when her family received asylum. Igbanugo contends that A.I.'s uncertainty illustrates that her testimony is not dispositive as to when Igbanugo's representation ceased. The referee was free to reject A.I.'s testimony as lacking credibility, but did not. *Id*. Therefore, the referee's finding regarding when the representation ended is not clearly erroneous.

Igbanugo also challenges the referee's finding that Igbanugo billed Y.I. and A.I. $500 for attendance at a 2009 hearing that did not concern them. Igbanugo asserts that the immigration court held the 2009 hearing to verify the status of Y.I.'s and A.I.'s background checks. Igbanugo's argument is unpersuasive. There is nothing in the record that substantiates Igbanugo's claim that he was still representing Y.I. and A.I. more than

11

2 years after Y.I. and A.I. had been granted asylum. Therefore, the referee did not clearly err in finding that Igbanugo improperly billed Y.I. and A.I. for the 2009 hearing.

We next consider whether the referee erred in concluding that Igbanugo violated Minn. R. Prof. Conduct 1.4(a)(3) and 1.5(b) by failing to "adequately explain to [Y.I. and A.I.] the nature and the meaning of the EAJA rider and the subsequent proceedings." Rule 1.4(a)(3) provides that a lawyer shall "keep the client reasonably informed about the status of the matter," while Rule 1.5(b) provides that "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client." Igbanugo challenges both the referee's findings that he failed to adequately explain the EAJA rider to Y.I. and A.I. and the referee's conclusions that he violated Rules 1.4(a)(3) and 1.5(b).

On this record, Igbanugo's arguments are unavailing. First, we note that the EAJA rider does not expressly explain or otherwise address what Y.I.'s and A.I.'s payment obligation would be in the event that the Eighth Circuit awarded Igbanugo Partners attorney fees. Second, the referee determined that "[Y.I. and A.I.] testified credibly that as a result of the EAJA award that they understood that they would not be responsible for payment of for [sic] the remainder of Respondent's fees." The referee was free to reject Igbanugo's testimony that he properly explained the EAJA rider to Y.I. and A.I. *See Waite,* 782 N.W.2d at 824. Therefore, the referee did not clearly err in concluding that Igbanugo violated Rules 1.4(a)(3) and 1.5(b).

The referee also concluded that Igbanugo violated Minn. R. Prof. Conduct 1.5(a) by charging Y.I. and A.I. $500 for a matter that did not concern them. Rule 1.5(a)

12

provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." At Igbanugo's disciplinary hearing, the Director presented an Igbanugo Partners' invoice, dated June 29, 2009, that detailed that Y.I. and A.I. were charged $500 for a June 17, 2009, hearing. As discussed previously, because the referee did not clearly err in finding that Igbanugo's representation of Y.I. and A.I. ended some time in 2007, the referee did not clearly err in concluding that Igbanugo's fee was unreasonable because he charged Y.I. and A.I. for attending a hearing that did not concern them.

Finally, the referee concluded that Igbanugo violated Minn. R. Prof. Conduct 4.4(a) by stating in an affidavit in the collection lawsuit, "I am deeply disturbed by [Y.I.'s and A.I.'s] unholy efforts to steal my services without paying just compensation of which they were contractually bound." Rule 4.4(a) prohibits a lawyer from using means with no substantial purpose other than to embarrass, delay, or burden a third person in relation to that lawyer's representation of a client. Igbanugo contends that he did not submit the affidavit solely to embarrass, delay, or burden Y.I. and A.I. We disagree. We fail to see how Igbanugo's statement, particularly the words "unholy" and "steal," has a substantial purpose other than to embarrass, cause delay, or burden Y.I. and I.A.

B.

We next consider whether the referee clearly erred in his findings and conclusions related to the K.A. matter. Igbanugo first contests the referee's finding that Igbanugo sent K.A. letters that had no substantial purpose other than to burden or harass. Igbanugo argues that his May 2010 letter was in direct response to a letter that K.A. had sent to

13

Igbanugo accusing Igbanugo of incompetent representation. Igbanugo also notes that he sent that letter because K.A. was "smearing [Igbanugo's] reputation in the Nigerian and larger African community to which they both belong." Based on his stated reasons for sending the letters, Igbanugo contends that the referee did not consider the context in which the letters were written. The record indicates, however, that both Igbanugo and K.A. testified as to the circumstances giving rise to the letters. The referee evaluated their testimony and concluded that Igbanugo's letter had no substantial purpose other than to burden or harass K.A. In doing so, the referee emphasized that Igbanugo admitted that his letter was an "emotional reaction" and that "anything done in anger is seldom correct." Based on the record before us, we conclude that the referee's findings and conclusions were not clearly erroneous.

Next, Igbanugo challenges the referee's finding that K.A. thought that Igbanugo was still seeking $17,451 in attorney fees after the courts of appeals modified the judgment. According to Igbanugo, the referee's reliance on K.A.'s testimony is misplaced because Igbanugo Partners sent an invoice to K.A. in June 2013 clarifying that K.A. owed only $2,944. Notwithstanding Igbanugo's assertion, Igbanugo Partners sent K.A. three subsequent invoices explaining that K.A.'s outstanding payment obligation was $17,451. Even though Igbanugo claims these invoices were sent in error, it does not alter the fact that K.A. thought that Igbanugo was seeking $17,451 in fees based on the invoices. Thus, the referee's finding was not clearly erroneous.

We next consider whether the referee erred in concluding that Igbanugo violated Minn. R. Prof. Conduct 1.5(a) by failing to adequately credit the payments that K.A.

14

made toward his outstanding bill obligation, and Minn. R. Prof. Conduct 3.1 by seeking fees that were already paid. As discussed previously, Rule 1.5(a) prohibits a lawyer from charging or collecting an unreasonable fee, and Rule 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." The referee's conclusion that Igbanugo failed to credit payments already made and sought fees for which he was already paid is supported by the record. In Igbanugo's collections lawsuit against K.A., both the trial court and court of appeals concluded that the face amount of the contracts between Igbanugo Partners and K.A. was $13,350, and that K.A. had paid Igbanugo $9,906, leaving a balance of $3,444. Having been paid $9,906.08 on a $13,350 bill, Igbanugo could not reasonably have believed that he was entitled to $17,160 in fees from K.A. Further, after the court of appeals determined that K.A.'s outstanding legal fees were $2,944, there was no basis in law or fact for Igbanugo Partners to continue billing K.A. $17,451 for unpaid fees, yet Igbanugo Partners did so on June 25, 2013, July 25, 2013, and August 21, 2013. Based on these facts, we conclude that the record supports the referee's conclusion that Igbanugo violated Rules 1.5(a) and 3.1.

We next consider whether the referee erred in concluding that Igbanugo violated Minn. R. Prof. Conduct 3.4(c) when he "negligently fail[ed] to adequately inform and supervise his staff [regarding] the reduction in fees ordered by the Court of Appeals resulting in three months of billings at the original rate." Rule 3.4(c) provides that it is misconduct for an attorney to "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

15

Because violations of Rule 3.4(c) require knowing conduct and the referee found that Igbanugo's conduct was negligent and not knowing, the referee committed clear error in concluding that Igbanugo's conduct violated Rule 3.4.

The referee also concluded that Igbanugo violated Minn. R. Prof. Conduct 8.4(d) by improperly disclosing that K.A. smoked marijuana during the hearing on the collection lawsuit. Rule 8.4(d) prohibits conduct that is "prejudicial to the administration of justice." Here, Igbanugo stated in open court that his client K.A. had not only admitted to the authorities that K.A. had used marijuana, but also that K.A. had admitted to him that K.A. had used marijuana. The trial court struck the statement from the record because it contained a client confidence.[3] By its nature, revealing a client confidence is prejudicial to the administration of justice because it undermines trust in the legal profession and the lawyer-client relationship. *See In re Agnew*, 311 N.W.2d 869, 870 (Minn. 1981). Therefore, the referee did not clearly err in concluding that Igbanugo engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).

Finally, the referee concluded that the two letters Igbanugo sent to K.A. "clearly and egregiously" violated Minn. R. Prof. Conduct 4.4(a) and 8.4(g). Rule 4.4(a) prohibits a lawyer from using means with no substantial purpose other than to embarrass, delay, or burden a third person in relation to that lawyer's representation of a client. Moreover, Rule 8.4(g) provides that it is misconduct for a lawyer to "harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual orientation, or

---

[3] Nothing in the record suggests that Igbanugo had K.A.'s consent to reveal the confidence.

16

marital status in connection with a lawyer's professional activities." Based on our careful review of the record, including the referee's factual findings, we conclude that the referee did not err in concluding that the two letters Igbanugo sent to K.A. violated Rules 4.4(a) and 8.4(g).

C.

With respect to the R.R. and K.R. matter, Igbanugo first argues that the referee erred in finding that the materials that K.D. served on the government before the January 2011 hearing were only a small portion of the materials necessary to support R.R.'s and K.R.'s asylum application. Igbanugo contends that the documents submitted constituted all of the original documents that Igbanugo possessed at that time. Igbanugo's argument fails, however, because while all the documents Igbanugo possessed at the time may have been turned over, it is clear from the record that all the required documents were not. Indeed, by his argument, Igbanugo essentially concedes that all the necessary documents were not turned over. Thus, we conclude that the referee's finding was not clearly erroneous.

Igbanugo also argues that the referee's finding that R.G.'s submissions on April 20, 2011, were made 3 months beyond the deadline set by the court is erroneous. This argument simply has no merit. At the January 12, 2011, hearing, the court ordered that the biometric data and original documents be produced within 1 week, but it was more than 3 months after the deadline when R.G. submitted a portion of these materials.

Having concluded that the referee's factual findings are not erroneous, we turn to whether the referee erred in concluding that Igbanugo violated Minn. R. Prof. Conduct

1.3 by failing to ensure that R.R.'s and K.R.'s biometric data and original documents were submitted to the court in a timely manner. Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Igbanugo characterizes the failure to timely provide the required materials as an "inadvertent oversight" that did not amount to a lack of reasonable diligence. Igbanugo further argues that "[t]he rules define diligence as what a reasonably prudent attorney would do, and there is no clear and convincing evidence that Respondent failed to meet this standard."

Igbanugo's argument lacks merit. Igbanugo originally had 15 months, from October 2009 to January 2011, to provide the required biometric data and original documents. After the government moved to dismiss for failure to provide the required materials at the January 12, 2011, hearing, Igbanugo was given 7 days, until January 19, to provide all of the required biometric data and original documents. The materials were not fully provided until August 24, 2011. A reasonably prudent attorney, faced with the same circumstances, would have ensured that the required biometric data and original documents were provided to the government within the time period ordered by the immigration court and would not have allowed 7 months to go by before complying with the court's order.

D.

We next consider whether the referee erred in his findings and conclusions related to the D.L. matter. The referee concluded that Igbanugo violated Rules 3.4(c) and 8.4(d) by failing to self-report in accordance with the court-imposed deadline. Igbanugo argues that he had no valid obligation to self-report because the order was beyond the

18

immigration judge's authority. The problem with Igbanugo's argument is that compliance with the court's order was required under Rule 3.4(c) absent an "open refusal based on an assertion that no valid obligation exist[ed]." *See* Minn. R. Prof. Conduct 3.4(c); *In re Lundeen,* 811 N.W.2d 602, 605-06 (Minn. 2012) (stating that attorney's failure to comply with court order violated Rule 3.4(c)). Here, Igbanugo did not make an open refusal to self-report. Further, it need not be repeated in any detail that failure to comply with a court order is conduct prejudicial to the administration of justice. *See Lundeen,* 811 N.W.2d at 605-06; *see also In re Mayrand,* 723 N.W.2d 261, 267 (Minn. 2006) (stating that an attorney's failure to comply with deadlines and failure to respond to court orders violated both Rule 3.4(c) and Rule 8.4(d)), *abrogated on other grounds by In re Jones,* 834 N.W.2d 671, 680 n.9 (Minn. 2013). Therefore, we conclude that the referee's findings and conclusions that Igbanugo violated Rule 3.4(c) and 8.4(d) are not clearly erroneous.

## II.

Finally, we consider the appropriate discipline for Igbanugo's misconduct. "A referee's recommended discipline carries great weight, but it is our ultimate responsibility to determine what discipline, if any, is appropriate." *In re Michael*, 836 N.W.2d 753, 765 (Minn. 2013) (citing *In re Selmer*, 749 N.W.2d 30, 36 (Minn. 2008)). The purpose of disciplinary sanctions for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). Factors that we consider when determining the

19

appropriate discipline include: "the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession." *Lundeen*, 811 N.W.2d at 608. Furthermore, while we look to similar cases for guidance as to the appropriate discipline, we tailor the sanction to the specific facts of each case after considering any aggravating and mitigating circumstances. *Id.*

Igbanugo cites several cases to support his position that other attorneys have committed similar offenses and received only a public reprimand. In contrast, the Director cites several cases to show that 90 days or more is the appropriate length for the suspension. The referee recommended that Igbanugo be suspended from the practice of law for 90 days. Based on the unique facts of this case, the serious nature of Igbanugo's misconduct and the harm his conduct caused to his clients, to the public, and to the legal profession, in addition to the aggravating factors found by the referee, we see no reason to deviate from the referee's recommendation.

Accordingly, we hereby order that:

1.      Respondent Herbert Azubuike Igbanugo is suspended from the practice of law for a minimum of 90 days, effective 14 days from the date of the filing of this opinion.

2.      Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.      Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

4.      Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days

20

before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that he is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court.

5. Within 1 year of the date of the filing of this order, respondent shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination. Failure to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.

6. Upon reinstatement to the practice of law, respondent shall be subject to probation for 2 years, subject to the following conditions:

a. Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Respondent shall promptly respond to the Director's correspondence by its due date. Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify respondent's compliance with the terms of this probation; and

b.      Respondent shall abide by the Minnesota Rules of Professional Conduct.

So ordered.