STATE OF MINNESOTA

IN SUPREME COURT

A24-1103

Original Jurisdiction

Per Curiam

In re Petition for Reinstatement of
Herbert A. Igbanugo, a Minnesota Attorney,
Registration No. 0191139.

Filed: April 1, 2026
Office of Appellate Courts

_____

Herbert A. Igbanugo, Minneapolis, Minnesota, pro se.

Susan M. Humiston, Director, Karin K. Ciano, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

Based on our independent review of the record, the Lawyers Professional Responsibility Board panel's conclusion that petitioner has not met his burden of proving moral change to practice law, as required for reinstatement, was not clearly erroneous.

Petition denied.

O P I N I O N

PER CURIAM.

In April 2023, we indefinitely suspended petitioner Herbert A. Igbanugo from the practice of law with no right to petition for reinstatement for 10 months. Igbanugo

petitioned for reinstatement in July 2024.[1] A unanimous panel of the Lawyers Professional Responsibility Board recommended against reinstatement, concluding that Igbanugo had failed to prove by clear and convincing evidence that he had undergone the requisite moral change. Igbanugo contests the panel's findings, conclusions, and recommendation, and he asserts that he should be reinstated. The Director of the Office of Lawyers Professional Responsibility (the Director) agrees with the panel's recommendation to deny reinstatement.

We hold that the panel's findings and conclusions are not clearly erroneous or inconsistent with our case law. Based on our independent review of the record, we conclude that Igbanugo has failed to prove by clear and convincing evidence that he underwent the moral change required for reinstatement. Accordingly, we deny his petition for reinstatement.

## FACTS

Igbanugo was admitted to practice law in 1988. In April 2023, we indefinitely suspended Igbanugo with no right to petition for reinstatement for a minimum of 10 months. *See In re Igbanugo* (*Igbanugo II*), 989 N.W.2d 310, 317 (Minn. 2023). We found that Igbanugo was responsible for 50 rule violations across seven client matters. *Id.* at 316–17. The violations included neglecting client matters, failing to notify clients of

---

[1] Later that same month, the Director of the Office of Lawyers Professional Responsibility filed a new petition for disciplinary action against Igbanugo. Here, we address only Igbanugo's petition for reinstatement. Our decision regarding the new disciplinary action against Igbanugo is addressed separately and independently from this opinion on reinstatement. *See In re Igbanugo*, __ N.W.3d __, No. A24-1119 (Minn. Apr. 1, 2026).

important updates, failing to explain legal issues, collecting unreasonable fees, collecting improper availability fees, failing to issue or to promptly issue refunds of unearned fees, failing to have measures to ensure lawyers and nonlawyers at his firm conformed with professional obligations, and providing false and misleading information to clients. *Id.* at 316–21 (describing Igbanugo's rule violations and misconduct in detail).[2]

We highlight Igbanugo's misconduct with respect to three of the client matters to provide additional context that is relevant to our reinstatement analysis. We collectively refer to the clients in those three matters as the *Onofre* clients.[3] The *Onofre* clients jointly brought a lawsuit against Igbanugo and his firm, alleging malpractice, breach of contract, and violation of the Minnesota Consumer Fraud Act—and they prevailed at trial in 2017 (*Onofre* case). *Id.* at 318. The court of appeals affirmed, and we denied review. *Cedillo v. Igbanugo*, No. A18-0860, 2019 WL 2168766, at *1 (Minn. App. May 20, 2019), *rev. denied* (Minn. Aug. 20, 2019).[4] An attorney who represented the *Onofre* clients in the *Onofre* case also filed an ethics complaint against Igbanugo with the Minnesota Office of Lawyers Professional Responsibility (OLPR) on behalf of the *Onofre* clients, reporting the

---

[2]    Prior to his current suspension, Igbanugo had been disciplined four times. He had received three admonitions and one 90-day suspension. *See In re Igbanugo* (*Igbanugo I*), 863 N.W.2d 751, 755 (Minn. 2015) (suspending Igbanugo for a minimum of 90 days).

[3]    In *Igbanugo II* we referred to the *Onofre* clients as "A.C-G., M.D., and O.O.C." 989 N.W.2d at 317. But because the parties refer to the lawsuit brought by these clients against Igbanugo as the *Onofre* case, we refer to the clients as the *Onofre* clients here.

[4]    Although the court of appeals' case caption lists the matter brought by plaintiffs Olimpia Onofre Cedillo, et al., as "*Cedillo*," the record in this disciplinary proceeding refers to the case as the *Onofre* case. To avoid confusion, we refer to this case as the *Onofre* case.

3

same misconduct alleged in the *Onofre* case. The misconduct described in that complaint ultimately became part of the charges in *Igbanugo II*, which gave rise to the suspension for which Igbanugo now seeks reinstatement. In other words, the misconduct at issue in the *Onofre* case and a portion of the misconduct for which Igbanugo was suspended in *Igbanugo II* are the same.

In 2021, Igbanugo filed a lawsuit in federal court against the attorneys for the *Onofre* clients, alleging that the claims of misconduct in the *Onofre* case were false and were instead based on the attorneys' personal vendetta against Igbanugo.[5] The federal court dismissed the lawsuit, determining that it was frivolous.[6] *Igbanugo v. Minn. Off. of Laws. Pro. Responsibility* No. 21-CV-0105-PJS-HB, 2021 WL 5216904, Order at *6 (D. Minn. filed Nov. 9, 2021).

In July 2024, Igbanugo filed a petition for reinstatement from the suspension we imposed in *Igbanugo II*. A panel of the Lawyers Professional Responsibility Board held a hearing at which Igbanugo testified and called four attorney friends as character witnesses.

---

[5]     Igbanugo also sued the OLPR, the OLPR Director, OLPR staff attorneys, the Lawyers Professional Responsibility Board (LPRB), the LPRB Chair, and an LPRB member, alleging that the OLPR's disciplinary proceedings violated his constitutional rights.

[6]     Igbanugo's federal lawsuit is the subject of a separate disciplinary action brought by the Director against Igbanugo. *See In re Igbanugo*, __ N.W.3d __, No. A24-1119 (Minn. Apr. 1, 2026). To be clear, we consider Igbanugo's petition for reinstatement (related to his suspension in *Igbanugo II*) and the Director's petition for disciplinary action against Igbanugo (related to Igbanugo's federal lawsuit) *separately*. We include this description of the federal lawsuit here because, as discussed further below, the panel's recommendation relied in part on Igbanugo's decision to challenge the Director's separate disciplinary petition.

On January 17, 2025, the panel issued findings of fact and conclusions of law, and it recommended that reinstatement be denied. The panel found that Igbanugo failed to present clear and convincing evidence of moral change, resting its findings and conclusions on the grounds that (1) Igbanugo did not demonstrate sufficient remorse and responsibility for his misconduct; (2) Igbanugo did not demonstrate sufficient change in the conduct or state of mind that led to his suspension; and (3) Igbanugo did not sufficiently demonstrate a renewed commitment to the ethical practice of law.

Igbanugo ordered a transcript of the hearing and requests that we reinstate him to the practice of law.

### ANALYSIS

We are responsible for determining whether an attorney will be reinstated. *In re Kadrie*, 602 N.W.2d 868, 870 (Minn. 1999). "We conduct an independent review of the entire record; although we consider a panel's recommendation, we are not bound by it." *In re Tigue*, 960 N.W.2d 694, 699 (Minn. 2021). When a petitioning attorney orders a transcript of the panel's hearing, we "uphold the panel's factual findings if the findings are supported by the record and are not clearly erroneous." *In re MacDonald*, 994 N.W.2d 547, 551 (Minn. 2023). Factual findings are clearly erroneous if we are left with the "definite and firm conviction that a mistake has been made." *Tigue*, 960 N.W.2d at 699 (citations omitted) (internal quotation marks omitted).

To be reinstated, an attorney must prove moral change, competence to practice law, compliance with the conditions of suspension, and compliance with the requirements of Rule 18, Rules on Lawyers Professional Responsibility (RLPR). *See In re Selmer*,

5

19 N.W.3d 457, 468 (Minn. 2025).  Because the key issue here is whether Igbanugo has demonstrated moral change, we focus on that requirement.

Igbanugo must present "clear and convincing evidence" that he has undergone moral change.  *Id.*  "Evidence of moral change must come from an observed record of appropriate conduct and the petitioner's state of mind and values."  *In re Lieber*, 834 N.W.2d 200, 204 (Minn. 2013).

To establish moral change, Igbanugo was required to "show [A] remorse and acceptance of responsibility for the misconduct, [B] a change in [his] conduct and state of mind that corrects the underlying misconduct that led to the suspension, and [C] a renewed commitment to the ethical practice of law."  *In re Mose* (*Mose V*), 843 N.W.2d 570, 575 (Minn. 2014).  The panel made detailed findings as to each of these factors and ultimately determined that Igbanugo did not demonstrate the required moral change.  Igbanugo challenges the panel's findings.  We examine each factor in turn.

### A.

First, we determine whether Igbanugo has proven "remorse and acceptance of responsibility for [his] misconduct."  *See id*.  "An attorney shows remorse and acceptance of responsibility when the attorney expresses genuine regret and moral anguish for his or her conduct and the effect it had on others."  *Selmer*, 19 N.W.3d at 477 (citation omitted) (internal quotation marks omitted).  "Genuine remorse exists when an attorney has gradually come to realize the wrongfulness of his conduct and . . . has ceased blaming others and taken full responsibility for his actions."  *Id.* (alteration in original) (citation

omitted) (internal quotations marks omitted).  Based on our review of the record, we agree with the panel that Igbanugo has failed to meet his burden.[7]

The panel noted that although Igbanugo has expressed remorse and testified that he accepts responsibility, at the hearing before the panel, Igbanugo shifted blame for his misconduct to his now-deceased law partner, attempted to distinguish his misconduct from committing crimes such as shoplifting, and maintained that he had run his firm without problems for years, minimizing his extensive disciplinary history.  To the extent Igbanugo disputes these findings, we hold that they have evidentiary support in the record and are not clearly erroneous.  Such testimony shows a lack of remorse and acceptance of responsibility for his misconduct.  *See In re Holker*, 765 N.W.2d 633, 638 (Minn. 2009) (noting that the petitioner's shifting of blame to others made his supposed acceptance of responsibility less credible).

The panel further found that Igbanugo's characterization of the *Onofre* case indicated that he did not accept responsibility for the misconduct underlying his representation of the *Onofre* clients.[8]  The record supports these findings.  We acknowledge that Igbanugo testified at the reinstatement hearing that the *Onofre* case had merit and was

---

[7]    Although Igbanugo lists several of the panel's findings regarding his lack of remorse and acceptance of responsibility as clearly erroneous, he provides no substantive analysis as to some of those findings.  Where Igbanugo's challenges consist of conclusory statements unsupported by legal citation or record evidence, they are forfeited. *Igbanugo II*, 989 N.W.2d at 321.  We address the remainder of Igbanugo's challenges in this opinion.

[8]    As discussed above, the *Onofre* clients were the clients in three of the seven matters for which Igbanugo was disciplined in *Igbanugo II*. The claims in the *Onofre* case were based on some of the same conduct by Igbanugo as the charges in *Igbanugo II*.

not "false." But in his responses to the Director's request for information (dated two and half months before his reinstatement hearing), Igbanugo described the *Onofre* case as based on the attorneys' personal animus against him and brought to "harass and embarrass" him. And in his briefing to this court, he similarly labeled the claims in the *Onofre* case as "vicious and false accusations" and characterized the *Onofre* case as a "vendetta" brought against him by an attorney in the *Onofre* case. Such language indicates that Igbanugo does not view the *Onofre* case as a legitimate action based on his own misconduct, demonstrating that he has not accepted responsibility for his misconduct in representing the *Onofre* clients.

Igbanugo argues that the panel erred by improperly evaluating his mental state prior to his reinstatement hearing, pointing to the panel's finding that "[Igbanugo's] submissions to the [p]anel reflect that any change of heart on [Igbanugo's] part, if it has occurred, is very recent." Igbanugo is correct that we evaluate moral change up to the date of the reinstatement hearing and focus on the attorney's mental state at the time of the hearing, not at the time of suspension. *See In re Dedefo,* 781 N.W.2d 1, 11 (Minn. 2010) (explaining that a panel erred when it "focused its inquiry on [the attorney's] mental state and values at the time of his suspension rather than at the time of his reinstatement proceedings"). But the panel's finding here is not inconsistent with *Dedefo*. In pointing out the changes in Igbanugo's statements, the panel was not erroneously focusing its analysis on Igbanugo's mental state at the time of his suspension. Rather, the panel appears to have been addressing the credibility of Igbanugo's contention that he accepted responsibility for his actions by comparing that testimony to the responses he had submitted approximately two

8

and a half months before the hearing. And the nature of those responses indicated that they reflected his then-current beliefs about the *Onofre* case, not his beliefs at the time of his suspension. Accordingly, the panel did not err in considering those responses because they bore directly on Igbanugo's "mental state and values at the time . . . of [the] reinstatement proceedings." *Id.*

The panel also did not credit Igbanugo's purported apologies to his former clients as evidence of his remorse. To the extent that Igbanugo challenges this finding and contends that he has apologized to his clients, we reject his claim. Igbanugo points to his cross-examination of witnesses at the evidentiary hearing in *Igbanugo II*, where he claims that he apologized to his clients who were testifying. As the panel noted, we already rejected these purported apologies in *Igbanugo II*. We explained that Igbanugo's statements "were not enough to be sincere" and noted that Igbanugo's clients testified that he never apologized to them. *Igbanugo II*, 989 N.W.3d at 331. And his purported apologies are additionally inapposite here because we evaluate the attorney's mental state at the time of his reinstatement proceedings, not his suspension. *See Dedefo,* 781 N.W.2d at 11. Although we acknowledge Igbanugo's explanation to us that he has not subsequently apologized to his clients because he did not believe they would welcome contact from him, the panel's decision not to credit Igbanugo's purported apologies is not clearly erroneous because it is supported by the record. Accordingly, Igbanugo's purported apologies to his clients at the disciplinary hearing in *Igbanugo II* are not evidence of his remorse.

Further supporting its conclusion that Igbanugo did not prove remorse and acceptance of responsibility for his misconduct, the panel assigned limited weight to the

9

testimony of his four character witnesses. The record demonstrates that the panel's findings regarding the character witnesses were not clearly erroneous. *See Tigue*, 960 N.W.2d at 703-04. Igbanugo's witnesses generally offered minimal testimony about Igbanugo's misconduct, the impact of Igbanugo's misconduct on his clients, or efforts by Igbanugo to demonstrate remorse or acceptance of responsibility. Although Igbanugo's witnesses consistently testified that Igbanugo has become more humble and less angry during his suspension, we agree that such testimony has limited bearing on whether Igbanugo has demonstrated "genuine regret and moral anguish for his . . . conduct and the effect it had on others." *See Selmer*, 19 N.W.3d at 477.

After independently considering the record, we hold that the record supports the panel's finding that Igbanugo failed to present clear and convincing evidence of remorse and acceptance of responsibility for his misconduct.

B.

Second, we determine whether Igbanugo has proven "a change in [his] conduct and state of mind that corrects the underlying misconduct that led to the suspension." *In re Stockman*, 896 N.W.2d 851, 859 (Minn. 2017) (alteration in original) (citation omitted) (internal quotation marks omitted). The record supports the panel's finding that Igbanugo did not establish a change in his conduct and state of mind.

Although the panel found that Igbanugo had implemented new practices to avoid improper fees and recognized the need to communicate clearly with clients, the panel concluded that Igbanugo failed to prove a change in his state of mind regarding his dishonest conduct. The panel found that Igbanugo and his witnesses failed to provide

testimony or evidence as to how Igbanugo has changed the dishonest conduct that led to his suspension. The panel observed that Igbanugo and his witnesses instead attributed Igbanugo's previous misconduct to client misunderstandings or Igbanugo's "excessive optimism" about results he wanted to, but could not, provide. These findings are consistent with the record, and we agree that they support a finding that Igbanugo did not meet his burden to show a sufficient change in conduct and state of mind.

In response, Igbanugo points to his personal growth and faith as evidence of changes in his conduct and state of mind. He challenges the panel's finding that he had been "personally dishonest" with clients, arguing that none of his ethical violations in *Igbanugo II* arose from his dishonesty. We will overturn a panel's factual finding only if we are left with a "definite and firm conviction that a mistake has been made." *Tigue*, 960 N.W.2d at 699 (citations omitted) (internal quotation marks omitted). But we see no mistake in the panel's finding here. Seven of Igbanugo's fifty rule violations in *Igbanugo II* were violations of Rule 8.4(c), which prohibits "conduct involving dishonesty, fraud, deceit, or misrepresentation." *See* Minn. R. Prof. Conduct 8.4(c); *Igbanugo II*, 989 N.W.2d at 320 n.5. Igbanugo's Rule 8.4(c) violations involved false statements to clients, which " 'is misconduct of the highest order' " because " '[h]onesty and integrity are chief among the virtues the public has a right to expect of lawyers.' " *See Igbanugo II*, 989 N.W.2d at 329 (quoting *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992)). Accordingly, Igbanugo's current contention that none of his violations in *Igbanugo II* arose from his dishonesty is unfounded and further shows that he has failed to acknowledge the

11

underlying dishonest conduct that led to his suspension, let alone prove a *change* in his state of mind regarding his dishonest conduct.

The panel did not clearly err in finding that Igbanugo has failed to establish a change in his state of mind concerning his dishonest conduct. To the contrary, our review of the record shows that it clearly supports this finding.

C.

Third, and finally, we examine whether Igbanugo has proven a "renewed commitment to the ethical practice of law." *See Mose V*, 843 N.W.2d at 575. "[A]n attorney's plan to return to the practice of law or implement systems to avoid future misconduct are factors that may be relevant to whether an attorney has shown a renewed commitment to the ethical practice of law." *In re Severson*, 923 N.W.2d 23, 32 (Minn. 2019).

The panel found that Igbanugo has not demonstrated a renewed commitment to the ethical practice of law. This finding was largely based on Igbanugo's choice to challenge the Director's new disciplinary proceedings arising out of his frivolous federal lawsuit. We agree with Igbanugo, however, that we should not consider his choice to challenge that separate disciplinary action in our analysis here. And we note that Igbanugo has shown that his law firm has implemented several promising operational improvements to avoid future similar misconduct. Additionally, Igbanugo's law partner allowed Igbanugo to work for the firm as a paralegal and case manager after his suspension and has committed to welcoming Igbanugo back to practice upon his reinstatement. This support from his law partner provides evidence that Igbanugo is trusted to ethically practice law. *See In re*

*Trombley*, 947 N.W.2d 242, 249 (Minn. 2020) (holding that support from the attorney's employer to return to work after reinstatement provides strong evidence that the attorney is trusted to ethically practice law). But even if we were to determine that Igbanugo has demonstrated a renewed commitment to the ethical practice of law, that determination would be insufficient to overcome our other determinations that Igbanugo has failed to show remorse and acceptance of responsibility and that he has also failed to demonstrate a change in his conduct and state of mind. *See In re Klotz*, 996 N.W.2d 165, 169 (Minn. 2023) (explaining that to prove moral change, a lawyer must show remorse and acceptance of responsibility; a change in conduct and state of mind; *and* a renewed commitment to the ethical practice of law). We therefore hold that Igbanugo has not shown by clear and convincing evidence that he has undergone the necessary moral change for reinstatement.

\*     \*     \*

Igbanugo bears the burden to prove by clear and convincing evidence that he meets *all* of the requirements for reinstatement to the practice of law. Because we conclude that Igbanugo has not shown that he has undergone the requisite moral change, we deny his petition for reinstatement from the suspension we imposed in *Igbanugo II*, and we need not address the other requirements for reinstatement.

Petition denied.